**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**LISA WILBURN,**

    **Plaintiff,**

**v.**                                                **Civil Action No.:
Jury Trial Demanded**

**RURAL/METRO CORPORATION
OF TENNESSEE,**

    **Defendant.**

## COMPLAINT

## INTRODUCTION

1. This suit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"), and the Worker's Compensation Laws of the State of Tennessee.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction of this action pursuant to 42 U.S.C. § 1331 because it involves federal questions. Venue properly lies in this Court pursuant to 28 U.S.C. 1391 (b) and 42 U.S.C. § 2000e-5 because all incidents alleged in this Complaint occurred in Shelby County, Tennessee.

## PARTIES

3. Plaintiff, Lisa Wilburn (formerly Lisa Cherry), at all times relevant to the actions taken by Defendant in this case was a resident of Shelby County, Tennessee. At all times

relevant to this case, Plaintiff was employed by Defendant as a paramedic based out of its facility located in Shelby County, Tennessee.

4. Defendant, Rural/Metro Corporation of Tennessee, is a Tennessee Corporation, with its principal place of business in Scottsdale, Arizona. At all times relevant to this cause of action Defendant was doing business in the State of Tennessee as an ambulance service. Defendant can be served with process through its agent for service of process: CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929.

## FACTS

5. Plaintiff was employed by Defendant in Shelby County, Tennessee on February 6, 2001, as a part-time EMT Basic employee until she became a full-time EMT Paramedic for Defendant in September 2001. Plaintiff had an excellent employment record with Defendant from the time she was hired until she was wrongfully terminated on February 16, 2011.

6. On April 28, 2009, Plaintiff was rushing to get to her ambulance to answer an emergency call when Plaintiff tripped and landed on her head suffering a serious, traumatic head injury, including a fractured skull.

7. As a result of the head trauma, Plaintiff experienced a lack of full cognitive functioning for a number of months. During Plaintiff's recovery period, she was off work, and received worker's compensation benefits.

8. In 2010, Plaintiff had recovered enough from her injury to return work as an EMT Paramedic, although Plaintiff experienced some difficulty when she first returned to work with riding in the back of the ambulance and with the general stressful duties and multi-tasking that come with the job of EMT Paramedic.

9. When Plaintiff first returned to work in 2010, she had to exercise intermittent FMLA leave on a few occasions when she would suffer from a severe headache, but Plaintiff did not have to take much time off from work once Plaintiff returned to full duty in 2010. Unfortunately, each time Plaintiff exercised her FMLA leave in 2010, Plaintiff's supervisor, Nikki Gast, would give Plaintiff a written reprimand for a time or attendance violation of company policy, notwithstanding the fact that Plaintiff had a physician's excuse and notwithstanding Plaintiff's condition.

10. When an employee of Defendant misses work, even for what should be a FMLA-approved absence from work, Defendant's supervisors are instructed to count each such absence from work to be an "occurrence."

11. On or about January 12, 2011, Ms. Gast sent Plaintiff a letter stating that Defendant's new policy allows only seven "occurrences" in a twelve-month period and that Plaintiff had had six "occurrences" in the last twelve months.  This was so even though Plaintiff had met the FMLA standard for being off of work during all or most of the six time periods Plaintiff had been off of work during the previous twelve months.

12. In February 2011, Plaintiff suspected that she was having another problem with kidney stones, so Plaintiff went to the doctor for testing, and called her supervisor inform her that Plaintiff would be off of work.  It turned out that Plaintiff was actually pregnant.

13. When Plaintiff returned to work on February 16, 2011, Plaintiff provided Defendant with the FMLA required doctor's note for her time off of work.  When Gast heard that Plaintiff was pregnant, Gast immediately terminated Plaintiff's employment and provided Plaintiff with a separation notice on February 16, 2011, that stated that Plaintiff was being terminated for violating Defendant's time and attendance policy.

## COUNT I

14. The allegations contained in the foregoing paragraphs 1 through 13 are incorporated by reference into this Count I.

15. Plaintiff suffered from a health condition on February 2011, as defined in FMLA, for which she had to seek medical care.

16. Plaintiff was entitled to take intermittent leave under FMLA for her health condition.

17. Defendant wrongfully failed to inform Plaintiff of her right to take intermittent leave as required by FMLA.

18. Defendant wrongfully denied Plaintiff intermittent leave in violation of FMLA.

19. Defendant wrongfully disciplined Plaintiff for the "occurrence," which should have been excused under FMLA.

20. Defendant wrongfully terminated Plaintiff in violation of FMLA. Accordingly, Plaintiff is entitled to an award of damages from Defendant for loss of wages and benefits, front pay, back pay, loss of earning capacity, emotional distress, and attorney's fees and expenses. Plaintiff is also entitled to an award of punitive damages against Defendant.

## COUNT II

21. Plaintiff incorporates paragraphs 1 through 13 of the Complaint by reference into this Count II.

23. Defendant's policy of terminating employees if they have seven "occurrences" in a twelve month period violates FMLA generally, and violated Plaintiff's rights under FMLA in this case specifically.

4

24.     Under FMLA, Plaintiff was entitled to take the FMLA related sick days the she took during the twelve months next preceding her termination, and it was unlawful under FMLA for Defendant to list any of Plaintiff's FMLA-approved sick days as "occurrences" for which Plaintiff would receive escalating discipline eventually resulting in wrongful termination. Accordingly, Plaintiff is entitled to an award of damages from Defendant for loss of wages and benefits, front pay, back pay, loss of earning capacity, emotional distress, and attorney's fees and expenses.  Plaintiff is also entitled to an award of punitive damages against Defendant.

## COUNT III

25.     The allegations contained in the foregoing paragraphs 1 through 13 are incorporated by reference into this Count III.

26.     Defendant improperly disciplined Plaintiff on the basis of her sex and her condition of being pregnant in violation of Title VII.  Plaintiff timely filed an EEOC charge against Defendant for violating Title VII, and Plaintiff received a right to sue letter from the EEOC dated July 22, 2011.

27.     Accordingly, Plaintiff is entitled to an award of damages from Defendant for loss of wages and benefits, front pay, back pay, loss of earning capacity, emotional distress, and attorney's fees and expenses.  Plaintiff is also entitled to an award of punitive damages against Defendant.

## COUNT IV

28.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 13 into this Count IV.

29.     Plaintiff engaged in protected activity by complaining to Defendant's management about her discriminatory treatment.

30. In response, Defendant took adverse employment actions against Plaintiff in violation of the anti-retaliation provisions of Title VII.

31. Accordingly, Plaintiff is entitled to an award of damages from Defendant for loss of wages and benefits, front pay, back pay, loss of earning capacity, emotional distress, and attorney's fees and expenses. Plaintiff is also entitled to an award of punitive damages against Defendant.

## COUNT V

32. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 13 into this Count V.

33. Defendant took retaliatory actions against Plaintiff for filing her Worker's Compensation claim in violation of Tenn. Code Ann. § 50-6-114.

34. Prior to filing the Worker's Compensation claim, Plaintiff's job performance was excellent, and Defendant had no cause to terminate Plaintiff.

35. Defendant took adverse employment actions against Plaintiff in violation of the anti-retaliation provisions inherent in the Tennessee Worker's Compensation Law.

36. Accordingly, Plaintiff is entitled to an award of damages from Defendant for loss of wages and benefits, front pay, back pay, loss of earning capacity, emotional distress, and attorney's fees and expenses. Plaintiff is also entitled to an award of punitive damages against Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1. The Court Order Defendant to rescind its adverse employment actions taken against Plaintiff.

      2.      The Court Order Defendant to make Plaintiff whole for all lost wages and fringe benefits, back pay, loss of earning capacity, and emotional distress relating to its wrongful acts of discrimination and retaliation.

      3.      The Court Order Defendant to pay pre-judgment interest, costs, and attorney's fees.

      4.      The Court Order Defendant to pay front pay if it is not feasible to rehire Plaintiff and to reinstate her seniority, lost pay, and lost benefits.

      5.      The Court Order Defendant to pay punitive damages.

      6.      The Court grant Plaintiff all other relief to which she is entitled.

      7.      Plaintiff demands a jury trial.

Respectfully submitted,

/s/ Ralph T. Gibson
**Ralph T. Gibson, #14861**
Bateman Gibson, LLC
65 Union Avenue, Suite 1010
Memphis, TN 38103
(901) 843-2466